# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH B. MALONE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 02: 11-cv-750 |

## MEMORANDUM OPINION AND ORDER OF COURT

September 18, 2012

### I. INTRODUCTION

Sarah B. Malone ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Children's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). This matter comes before the Court on cross motions for summary judgment. The record has been developed at the administrative level. For the following reasons, the decision of the ALJ will be REVERSED and the Commissioner will be directed to award benefits to Plaintiff.

### II. PROCEDURAL HISTORY

Plaintiff filed for CIB and SSI with the Social Security Administration January 15, 2008, claiming an inability to work due to disability beginning February 1, 1999. (R. at 140 – 44)[1].

---

[1] Citations to ECF Nos. 5 – 5-13, the Record, *hereinafter*, "R. at __."

Plaintiff was initially denied benefits on June 24, 2008. (R. at 78 – 99). A hearing was scheduled for September 2, 2009, at which Plaintiff testified and was represented by a credited disability representative. (R. at 38 – 73). An impartial vocational expert, Eugene A. Czuczman, also testified. (R. at 38 – 73). On September 9, 2009, Administrative Law Judge George A. Mills III ("ALJ"), issued a decision in which he denied benefits to Plaintiff. (R. at 25 – 37). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on December 17, 2010, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 12 – 16).

Plaintiff filed her Complaint in this Court on June 9, 2011. Defendant filed his Answer on August 12, 2011. Cross motions for summary judgment followed.

### III. STATEMENT OF THE CASE

#### A. General Background

Plaintiff was born on April 29, 1988, and was twenty-one years of age at the time of her administrative hearing. (R. at 46). She resided at home with her parents. (R. at 50). Plaintiff completed high school and received her diploma, but was home-schooled during her twelfth grade year with the aid of a tutor provided by her school. (R. at 48). She has no post-secondary education. She also has no history of substantial gainful activity. Her sole attempt at employment was as an aid in a nursing home, where she worked for only a few days. (R. at 50).

At the time of her application for benefits, Plaintiff claimed that she was unable to work due to fibromyalgia, deafness in the left ear, migraines, and seizures. (R. at 182). Plaintiff had difficulty answering questions during her application interview – frequently requiring the interviewer to repeat questions, and often deferring to her mother to answer questions. (R. at

179). She subsists on the support of her parents, as well as cash assistance and medical benefits from the state. (R. at 50 – 51).

### B. Relevant Treatment History[2]

The evidence presented to the ALJ included school records of Plaintiff's specialized educational program when she was in high school. (R. at 157 – 77). The records were from 2005 and 2006. (R. at 157 – 77). In 2005, Plaintiff was identified as a having a learning disability with lower cognitive ability. (R. at 167). Plaintiff had been utilizing learning support services in school since the second grade. (R. at 172).

In 2005, Plaintiff's reasoning skills were good/appropriate for her age, however, her math skills were significantly lower – around a fourth to sixth grade level. (R. at 173). Plaintiff's grades from the 2003 – 2004 academic year included As in Art and Phys. Ed, Bs in Home Ec. And Life Skills, Cs in English, Math, and History, and a D in Science. (R. at 173). Plaintiff's grades partway through the 2004 – 2005 academic year were similar, but with marginal improvement. (R. at 174). Plaintiff required specially designed instruction to maintain her level of achievement. (R. at 176).

More specifically, in terms of her "present levels of academic achievement," it was noted in 2006 that Plaintiff was:

> enrolled in all general education classes. Modifications are required for the student to succeed in the general education curriculum. [Plaintiff] attends the greene county vocational technical school. She is progressing at an acceptable level at that educational location. She is passing all her classes at home school as well. At this time [Plaintiff] does plan on attending a post secondary school. She is also planning on pursuing competitive employment in her vocational area. [Plaintiff] plans on living at home for a period of time after graduation, then she would like to live independently. [Plaintiff] will be provided further information

---

[2] Plaintiff's only charge of error in the ALJ's decision was his failure at Step 3 to find her automatically entitled to disability benefits according to the listings at 20 C.F.R., Pt. 404, Subpt. P, App'x 1. (ECF No. 8 at 5 – 8). As such, the Court will only discuss those portions of the medical record relevant to the listing in question.

regarding voters registration [sic] a drivers education will also be available. [Plaintiff] has the necessary recreation and leisure skills.

(R. at 160). In terms of her "present levels of functional performance," it was noted that Plaintiff had:

> lower cognitive ability and resulting lower achievement in reading, math, and written expression [requiring] a program of specially designed instructions i [sic] these areas for educational progress to occur. Modifications in general education classes are needed to compensate for deficits.

(R. at 160). Plaintiff's noted strengths included, "cooperative," "attentive," "prepared for class," "listening skills," and "working with hands." (R. at 160). Accommodations for Plaintiff's deficits included extended test time, use of a calculator, and oral reading of directions for standardized tests, as well as extended test time, shortened assignments, and oral reading of directions while in school. (R. at 161, 163).

On May 26, 2008, Plaintiff underwent a psychological evaluation conducted by Thomas E. Andrews, Ph.D., on behalf of the Bureau of Disability Determination. (R. at 388 – 95). Plaintiff appeared at the evaluation with her mother and another relative. (R. at 390). Dr. Andrews noted Plaintiff to be pleasant and cooperative, yet mildly tearful during conversation about problems in her life. (R. at 390). Plaintiff's affect was mildly flat, at times. (R. at 391). Plaintiff's general fund of knowledge was considered to be somewhat restricted, and she appeared to be limited, intellectually. (R. at 390). Plaintiff required help reciting the date, and had some difficulty with recall. (R. at 390). Dr. Andrews found that Plaintiff did exhibit good response to hypothetical judgment questions. (R. at 391).

Dr. Andrews tested Plaintiff's mental ability using the WAIS-III IQ Scale, and concluded that Plaintiff had a Verbal IQ of 73, Performance IQ of 73, and Full Scale IQ of 70. (R. at 391). Plaintiff was considered to be in the range of borderline intellectual functioning. (R. at 391).

4

Plaintiff's reading and spelling skills were noted to be at a third or fourth grade level. (R. at 392).

On June 17, 2008, Ray M. Milke, Ph.D., completed a mental residual functional capacity assessment of Plaintiff based upon her medical record. (R. at 396 – 99). Dr. Milke concluded that Plaintiff was only moderately to not significantly limited in all areas of functioning, and believed that she was capable of full-time employment. (R. at 396 – 99). Dr. Andrews assessment findings were considered to be largely consistent with the assessment of Dr. Milke. (R. at 396 – 99). In a Psychiatric Review Technique completed on the same date, Dr. Milke diagnosed Plaintiff with only borderline intellectual functioning. (R. at 403).

**C. Administrative Hearing**

At her hearing, Plaintiff tearfully explained that while she did complete her high school education, she did so by being homeschooled her senior year. (R. at 48). Plaintiff claimed that she had a great deal of difficulty completing school work, and that her district did not wish her to graduate. (R. at 48). Plaintiff testified that her teachers had to provide her with significant aid in order for her to complete course work. (R. at 49). Her at-home teacher/tutor her senior year allegedly fought – successfully – for Plaintiff to graduate. (R. at 48). Plaintiff stated that she could read "somewhat," and that she was not a "very good speller." (R. at 49). She was able to add and subtract, and could count money to make purchases. (R. at 49). Plaintiff did not have a driver's license, nor had she attempted to take the test to obtain a license. (R. at 47).

In terms of past attempts to seek employment, Plaintiff stated that she had begun a training program at a local nursing home to work as an aid. (R. at 50). She was ultimately unsuccessful, because her legs and feet allegedly began to give her significant pain, and her

various medications made her too tired. (R. at 50). Plaintiff left this job after several days, and did not attempt to work thereafter. (R. at 50).

When questioned by the ALJ, Plaintiff explained that her greatest barriers to employment were persistent migraines, fibromyalgia affecting her arms, legs, and shoulders, and loss of hearing – primarily in her left ear. (R. at 51 – 52, 55). Plaintiff claimed that despite the recommendation of her doctor, her insurance would not pay for hearing aids. (R. at 52). She took only ibuprofen and naproxen for her migraines and fibromyalgia, and hydrocodone for hand pain. (R. at 55). Plaintiff described experiencing difficulty with the use of her left hand following a dog bite that shattered one of her knuckles, resulting in several surgeries and infections. (R. at 52 – 53). She also complained that she did not sleep well at night, that medication to help her sleep was ineffective, and that as a result, she spent much of her day sleeping. (R. at 57 – 58, 62).

Aside from her physical impairments, Plaintiff had no real psychological treatment history, but claimed that she was planning to seek counseling in the future. (R. at 54). However, she endorsed experiencing difficulty with memory and completing school work. (R. at 60). Plaintiff lost interest in her hobbies, and had difficulty reading. (R. at 63 – 64). She recently broke up with a boyfriend of three years, and no longer socialized with her friends. (R. at 64). Yet, she testified that she did not have problems dealing with other people. (R. at 60). Plaintiff could prepare simple meals, and take care of her personal hygiene and grooming. (R. at 62 – 63). Plaintiff also helped with chores around her home. (R. at 62 – 63).

**IV. STANDARD OF REVIEW**

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a

6

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[3], 1383(c)(3)[4]; *Schaudeck v.*

---

[3] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

*Comm'r Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986).

---

[4] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

## V. DISCUSSION

In his decision, the ALJ concluded that Plaintiff suffered from severe medically determinable impairments in the way of left ring finger fracture and ligament damage, status post-surgical repair, migraine headaches, fibromyalgia, mild loss of hearing in the left ear, adjustment disorder, and borderline intellectual functioning with learning disability. (R. at 28). In spite of suffering from these numerous impairments, the effects stemming therefrom were not found to be severe enough to qualify Plaintiff for entitlement to benefits under the listings at 20 C.F.R., Pt. 404, Subpt. P, App'x 1. (R. at 28).

In her brief, Plaintiff's sole contention is that the ALJ erred at Step 3 by failing to find Plaintiff disabled under Listing 12.05 (Mental Retardation). The criteria under 12.05(C) are as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R., Pt. 404, Subpt. P, App'x 1. Plaintiff believes that her school records, in conjunction with the assessment of Dr. Andrews, prove that she meets the above requirements. Defendant counters that Plaintiff does not qualify under 12.05(C), because she was never diagnosed with "mental retardation" – but instead, only borderline intellectual functioning – and Plaintiff did not exhibit "significantly subaverage general intellectual functioning with deficits in adaptive functioning. (ECF No. 10 at 14 – 17).

9

The United States Court of Appeals for the Third Circuit has held that in order to "meet the requirements of § 12.05C a claimant must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." *Markle v. Barnhart*, 324 F. 3d 182, 187 (3d Cir. 2003). In his decision, the ALJ did not dispute that Plaintiff met the second requirement, but concluded that the third requirement was not proven, and as a result – and in combination with evidence of her functional abilities – Plaintiff's IQ scores were "irrelevant." (R. at 29 – 30).

In terms of proving the third requirement, it is necessary to show "'deficits in adaptive functioning' with an onset prior to the age of 22." *Gist v. Barnhart*, 67 Fed. App'x 78, 81 (3d Cir. 2003). The claimant in *Gist* failed to meet this standard, because she "presented no evidence to substantiate her testimony that she was placed in special education classes or otherwise suffered from deficits in adaptive functioning." *Id.* at 82. The present case is readily distinguishable in this respect. However, the ALJ here disputed the existence of deficits based upon a lack of a diagnosis of "mental retardation" and Plaintiff's grades in her classes. (R. at 29 – 30). He also cited her good behavior, improving self-confidence, and intent to register to vote, apply for a driver's license, and seek competitive employment as evidence that she did not have deficits in adaptive functioning. (R. at 29 – 30).

What the ALJ neglected to mention was that Plaintiff required an individualized educational program, and various modifications to testing conditions, school work, and instruction methods simply to maintain C grades in English, Math, and History, and a D grade in Science. Plaintiff's educational records documented a history of special education since the

10

second grade. Moreover, there is no requirement in 12.05 that necessitates that a claimant be diagnosed with "mental retardation," to meet the listing. While it would certainly lend weight to Plaintiff's claim, the lack of such a finding is not dispositive. 12.05 requires that mental retardation be shown by evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Mental retardation may be inferred based upon a longitudinal history of functioning. *Markle*, 324 F. 3d at 189. The Court finds that the evidence presented by Plaintiff was sufficient to show such deficits and subaverage intellect.

With respect to Plaintiff's Full Scale IQ score of 70, the ALJ considered it to be unsupported based upon the aforementioned evidence. However, in *Markle*, the appellate court held that "[a]n ALJ cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." *Markle*, 324 F. 3d at 187 (quoting *Morales v. Apfel*, 225 F. 3d 310, 318 (3d Cir. 2000)). The *Markle* court agreed with a case from the Sixth Circuit in which the Court of Appeals did not find a claimant's driver's license and history as a truck driver to be inconsistent with an IQ of 68. *Id.* (citing *Brown v. Sec'y of HHS*, 948 F. 2d 268, 279 (6th Cir. 1991)). Proper rejection of IQ scores occurred in cases wherein the claimant worked in the private sector, had a driver's license, was the primary caretaker of a young child, and completed the ninth grade without special education courses, and wherein another claimant had a two year college degree, was enrolled in a third year of college, had a history of skilled jobs, and had taught algebra. *Id.* (citing *Clark v. Apfel*, 141 F. 3d 1253, 1255 (8th Cir. 1998); *Popp v. Heckler*, 779 F. 2d 1497, 1499 (11th Cir. 1986)). Here, Plaintiff never managed to hold competitive employment or obtain a driver's license.

More importantly, however, is the lack of objective medical evidence provided by the ALJ to call Dr. Andrews' IQ scores into doubt. There was no evidence cited which directly

11

contradicted the results of the intelligence testing. Dr. Andrews specifically stated that he considered the results to be valid. (R. at 391). He also noted that despite her specialized educational program, Plaintiff's reading was at a fourth grade level, and her spelling was at a fourth grade level, or lower. (R. at 392). The Court finds that the ALJ's conclusion that Plaintiff's IQ scores were not reflective of her actual functioning was erroneous, and unsupported by substantial evidence. Plaintiff clearly met her burdens under 12.05(C) as defined in *Markle*. *Markle*, 324 F. 3d 187.

The only remaining issue is whether the case should be remanded to the Commissioner or reversed with a direction to award benefits to Plaintiff. *Morales*, 225 F. 3d at 320. "[T]he decision to . . . award benefits should be made only when the administrative record has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.* (quoting *Podedworny v. Harris*, 745 F. 2d 210, 222 (3d Cir. 1984)). It is clear from the evidence that Plaintiff's IQ scores and adaptive deficits met the requirements of Listing 12.05(c). Remand is, therefore, unnecessary.

## VI. CONCLUSION

Based upon the foregoing, the Court finds that substantial evidence supports Plaintiff's disability under Listing 12.05(c). Accordingly, Plaintiff's Motion for Summary Judgment will be granted; Defendant's Motion for Summary Judgment will be denied; and, the decision of the ALJ will be reversed and the Commissioner directed to award benefits to Plaintiff.

An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH B. MALONE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 02: 11-cv-750 |

## ORDER OF COURT

**AND NOW**, this 18th day of September, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 7) is GRANTED.

2. Defendant's Motion for Summary Judgment (ECF No. 9) is DENIED.

3. The Decision of the Commissioner is REVERSED and the Commissioner is directed to award benefits to Plaintiff.

4. The Clerk will docket this case as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc: Kelie C. Schneider, Esquire
Berger and Green, P.C
Email: kschneider@bergerandgreen.com

Albert Schollaert
Assistant U.S. Attorney
Email: albert.schollaert@usdoj.gov